His Honor, 'CHARLES F, CLAIBORNE,
rendered the opinion and decree of the Court, as follows:
•This is a redhibitory action. The plaintiff alleges that on April Tlth, 1914, he purchased of the defendant a horse; that on April 20th, 1914, after the sale, it took sud-. *166 dexily sick and died of heart failure within twenty min'utes; that said disease existed before the sale, wherefore he claims a return of the price.
Defendant admits the sale, but denies all the other allegations and specially avers that the horse was sound when sold and that if he died of any disease it developed after the sale.
There was judgment for plaintiff and defendant has appealed. ’ .
The law of the case is as follows:
0. C., 2530 (2508):
“The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.”
C. 2532 (2510):
“If the thing affected with the vice has perished through the badness of its quality, the seller must sustain the loss. ’ ’
When the disease has manifested itself after three days, the burden of proof is on the buyer.
30 A., 907; 14 A., 727; 13 A., 475 ; 5 R., 222; 10 La., 45; 8 N. S., 478.
This is only a repetition of the general principles .of the law that in order to recover plaintiff must make his claim certain; to maké it only probable is not enough.
1 H. D., 524.
Therefore, in order to succeed in this case, plaintiff must prove that the disease of which the horse died existed at the time of the sale.
*167 The unanimous opinion of all witnesses and of plaintiff himself is that the horse was in fine condition on the day of the sale. The plaintiff used it hitched to a wagon delivering bread; on the last day, when the plaintiff was taking it out .of the stable he noticed that the horse looked strange; it laid down and twenty minutes after uttered a loud groan and died; Dr. Douglass, a veterinarian, was sent for, he cut into the horse’s heart, opened it, and toox. out two clots one about 12 and the other .about twenty inches long of a yellowish white appearance resembling' chicken fat and of the thickness of a man’s thumb; the two clots were taken to Dr. Ford and examined by him.
Dr. Ford thinks those clots had been forming for more than ten days, say for two or three weeks, and that they caused death; there are ante-mortem and post-mortem clots; the former are yellowish and consistent and the latter brownish and soft; the heart disease manifests itself in •a horse sometimes very suddenly; when it causes the formation of a clot the horse gets weak and just falls over dead; he might die in 3 or 4 hours or he might die in two or three weeks or months. Dr. Ford’s testimony was given as his own opinion and the result of experience; it was not based on any authority as he could not give the name of any author he had reiad on the subject.
Dr. Douglass, who made the post-mortem examination of the horse, testifies that he found a large thrombi in the heart, extending down the aorto; by thrombi, he means a clot; in his opinion it took two or three hours for it to form; he bases his opinion upon Merilliat, a standard text book on Veterinary Surgery; they were the cause of death; the causes of these clots .are many, strains, injuries and anything that would roughen the membrane of the heart of aorto; the cause of the clots in this case, was a roughened condition of the endothelial layer; the *168 blood was absolutely normal; he thinks the cause of death was over driving, over exertion and tired heart, rupture of the valves and roughness of the membrane, heart failure.
Nr. White never saw the horse, nor the clots; but he read the testimony of Drs. Ford and Douglass; he is positive that the clots had nothing to do with the death of the horse; these ante-mortem clots are the result of suffering; they occur in cases- of tetanus, pneumonia, trouble of the kidney or any other disease; they are found in ninety per cent of cases where animals die; they form anywhere from fifteen to twenty minutes before death; the horse died of chronic heart disease.
We rise from a reading- of the testimony of these three surgeons with the conclusion that the testimony of Dr. Ford as to the cause of death is not convincing because it is contradicted by Drs. White and Douglass; that the testimony of Dr. White cannot be the basis of a judgment as it is only an opinion formed from the reading of the testimony of the other two surgeons which it contradicts, and that the testimony of Dr. Douglass does not support plaintiff’s case. The -only certain fact of the case is that the horse died of heart failure. In order to decide in favor of plaintiff we would have to conclude that this heart trouble existed on the day of the sale and before as he alleges; but of this there is no certain evidence. It would be at best only a supposition or 'a conjecture which would not meet the requirements of the law. In our opinion the plaintiff has made out only a speculative and probable case.
The case of Mackie vs. Davis, 13 A., 475, bears much resemblance to the present case: In that case a slave died of aneurism, which is a ‘ ‘ localized dilation of -an ar *169 tery due to the pressure of the blood acting on a part weakened by accident or disease.” (Century Dictionary.) A physician in that case testified that he was of “the opinion that the condition that led to aneurism itself existed before the sale, does not say that the aneurism itself existed at the time, or before it.” He added that “it could not be ascertained from the autopsy whether the death was caused by ¡a, rupture produced by sudden exertions, or from the' natural disease of aneurism. ’ ’
Opinion and decree, January 7th, 1916.
In Stackhouse vs. Lendal, 7 A., 670, the Supreme Court said that plaintiff cannot recover when the proof of the cause of death rested exclusively upon the conjectual and conflicting opinions of physicians.
7 A., 670.
In Sargent vs. Slatter, 6 A., 72, it was said: “It is true we have repeatedly held, that the conjectural opinion of witnesses as to'the duration of disease of slaves, founded on a post-mortem examination was not, by itself, fui* proof of the fact. ’ ’
Also Roca vs. Slawson, 5 A., 708; Dupre vs. Desmaret, 5 A., 591; 4 A., 376.
In Laughlin vs. Sontheimer, 1 Court of Appeal, 7, this Court said:
‘ ‘ The rescission of the sale will not be decreed when the conjectural and conflicting opinions of experts (veterinary surgeons) leave doubtful the fact of the existence of the vice before, at the time and within the three days following the sale.”
It is therefore ordered that the judgment of the District 'Court be reversed and avoided, and that there now be judgment in favor of defendant rejecting plaintiff’s demand at his cost in both Courts.